All right, our third case is number 20-11326, Cheshire Bridge Holdings, LLC versus the City of Atlanta. Mr. Aronson, you can start us off. Good morning, Your Honors. This case fundamentally and quite candidly solely deals with the definitions of adult businesses in the City of Atlanta and the sub parts of that definition and whether they are overbroad. That being adult bookstore, adult motion picture theater, adult mini motion picture theater, adult cabaret, and an adult entertainment establishment. I'm going to excuse you, Your Honors, but I'm getting signs on my computer about starting the video and so I don't know if there's any problem. So if we're supposed to be able to see you, we can't. I thought I did it. Let me. You were on when you started and then you sort of blacked out. Yeah, I didn't do anything. I didn't do anything and it's still giving me this trouble. Let me see what I can do. Oh, it's not doing anything for me. Well, Mr. Aronson, if you're having that sort of computer issue, we'll just make do and hear you by audio. So just go right ahead with your argument and hopefully you can get that fixed at some point during the argument. I'm trying to. I will tell you, I look much better in person. The camera does wonders for all of us. Can you give me one second? I have somebody trying to help me here. I don't know why this is not working. It's not allowing me. I'll proceed on. Okay. As I was saying, that this is a challenge to the definitions of adult entertainment, of the adult entertainment businesses in Atlanta, the subgroupings, adult mini motion picture theater, adult motion picture theater, the adult Let's start with adult bookstore. There is language in the district court's order which says that that definition was not really teed up and you never moved for summary judgment on it. The city thought that it wasn't an issue so it just didn't address it. So what are we to do with the adult bookstore part of this summary judgment on the definition of adult business and adult bookstore is one of the subgroups. So the bottom line of it is we believe that we've also covered adult bookstore in it. But you never presented any argument about that definition, right? We did not present any extensive argument who was based on the umbrella argument of adult books of adult three of those definitions might be problematic doesn't mean that the fourth one is. Well if the court, this is a nesting type of definition. If an adult, if you find to be unconstitutional the adult entertainment establishment, the adult motion picture theaters, and adult cabaret, the definition of adult business makes no sense because adult business does include all five of those subgroups. So it can't stand alone adult business just being an adult bookstore. That would make no sense whatsoever to the purpose of the code which is defining adult businesses and in their totality not in the singular. Yeah I understand that argument. That argument is different though. That argument is hey if we're successful in knocking out four or three of the four or four of the five definitions it makes no sense to keep that one definition standing. The whole thing has to go by the wayside. So I understand that argument but there's no separate attack on adult bookstore in and of itself right? Yes but there is the defense of that in the city's motion for summary judgment where they were trying they were asking for summary judgment on the definition of adult bookstore. So therefore we may not be entitled to summary judgment on on our attack on the definition of adult bookstore but if we are correct the city is not entitled to but it's got to be a claim you presented you're the plaintiff right? We did I cannot disagree with this court. Let me ask you a question about the zone so this is a zoning ordinance. What does the ordinance require you to do? Where does it require you to be located? It requires us to be it's not where it requires us to be located it where it's where it prevents us from being located. Okay well where does it prevent you then? It prevents us to be excuse me I'm sorry go ahead. It prevents us to being located in generally commercial districts in which normal theaters can be located in which normal bookstores can be located in which normal I guess my point is isn't it doesn't it say something like 500 feet from a residential area isn't that the restriction imposes or am I am I wrong about that? Well you're correct but you're you're you're conflating two different things. One is the zoning districts that we are prevented from going into and then where we are allowed to go into we still have to meet the 500 feet and the thousand feet zoning separations so it's a double whammy for lack of a of a better legal phrase. We are we are not allowed in all districts at all commercial establishments that are parallel to the our types of uses are allowed it to be and and when we are allowed into certain districts we then have distance separations that those same underlying commercial uses uses namely theaters or or cabarets would not have to have those same restrictions. I don't think I saw an argument in your brief to the effect that there were not other alternative avenues for your expressive conduct. We did not argue that there were not sufficient alternative avenues of communication. That's that's not an issue for today. So it's really it's really kind of irrelevant whether you are precluded from all commercial zones. No it's excuse me your honor but it's totally not irrelevant. Let me suggest it might be relevant and maybe I'm wrong but if I understood your argument correctly your argument is that if these definitions aren't or it could could apply for example to mainstream productions involving nudity that they would be overbroad because the rights of people who are not you but somebody else who might want to have a mainstream production involving nudity that their First Amendment rights would be violated and I guess that's the question that I have about the zoning is that I assume that you're right about the definitions why given this that this is zoning and not a ban why would we necessarily say that it would be unconstitutional for the city of Atlanta to say just assume it's 500 feet that if you want to have a production involving nudity can't be within 500 feet of a house like why would that be unconstitutional well again it's not just the zoning as far as distance but it's also that we are relegated to the bottom line of it is my question I mean so why would I mean that's my like why would that be I understand in these other cases it's a ban so the city is saying no no of this and the question is if that if whatever the definition does if it applies to just regular sort of mainstream nudity I get why that's a constitutional problem they're banning it but here the most that you're arguing is that the city might be saying that if you want to have a production involving nudity it has to be in a particular area why would that be unconstitutional because it's an infant because it's an infringement on First Amendment protected expression it's in the fridge the chilling effect let me give you an example you have a a theater and it wants to put on the play hair or Equus or old Calcutta and but it can't because it's in a certain zone district we don't know and we will never know how much First Amendment expression has been stifled because the venues in which they want to put these these these plays on these movies in are not zoned correctly for it but more theaters are I mean I guess and that's my question I mean that's why it goes to the zoning issue what I mean I would understand your point if if Atlanta were banning the activity because then you could just say well look there's some theater somewhere that I want to put this on and they can't but I guess my question is like this is just a zoning thing so for all we know every single theater in Atlanta is already complying with the zoning right so they could put on whatever they want to well let me present it this way if I if I may what allows cities counties different judge different government health entities to presumed to have cause or cause adverse secondary effects those that do not cause adverse secondary effects should not be treated the exact same way now you say well it's only a zoning regulation City of Renton versus Playtime Theater specifically comes across with the time place and manner restrictions this is a place restriction and in order to have a valid place restriction you must be able to show adverse secondary effects and that it furthers a substantial governmental interest these relegating mainstream entertainment if we can use that term right now to different areas of the city where all entertainment is not allowed is an improper manner place restriction because now you are silencing speech in those areas that nor that other speech that does not show a breast that does not show a fleeting nudity that does not show a hair equest as I said before you are relegating them to a place and that is an improper time place and manner restrictions because they do not cause adverse secondary effects and they do not and it does not further a substantial governmental interest to relegate them to these areas to these distance separations that is why it is unconstitutionally overbroad and it has a chilling effect because we will never know how many plays how many shows how many artistic exhibitions how many various forms of communication have been stifled because they had no places to go or they chose not because they chose they wanted to go to a commercial district where they were totally entitled to be at and not under the the adult entertainment definitions as the city of Atlanta's overbreath definitions do provide okay mr. Aronson thank you very very much you've saved your your time for rebuttal miss Wagner may it please the court Laura Wagner on behalf of the city of Atlanta the city of Atlanta's adult business zoning ordinances are not overbroad because properly construed the definitions of adult businesses apply only to the ones that regularly present adult fair and I stop you for a second I there's something that's been perplexing me about this case and maybe it's maybe it matters and maybe it doesn't matter but in 1981 a federal district court in the purple onion case issued a declaratory judgment and permanent injunction against a similar although not identical zoning ordinance by the some of the language in this ordinance is virtually the same as the language that was permanently enjoined by the district court in 1981 what is going on here so your honor the purple onion case found several problems with the prior the 1977 version of the city's zoning ordinance first it found that it might apply to a house and not only a business because it didn't say that it applied to commercial establishments so to correct that the city when it reenacted the ordinance added that the entertainment in adult movie theaters for example had to be shown to patrons therein with result to adult entertainment establishments what concerned the district court in purple onion was that whether something was an adult entertainment establishment turn on the subjective whether it appealed to the prurient interests of the patron therein so the city changed that as well to have an objective standard saying that only if dancers are nude or substantially nude does that regular and that regularly occurs does that render something adult entertainment establishment so the city fixed all of the problems of the district court found in purple onion and in fact what the district court said was the city could have mostly more closely adhered to the definitions approved in young by the the definitions of adult motion picture theaters and adult bookstores from young so these don't adult the for example and you can tell me where I'm wrong the definition of adult theater doesn't seem to have changed it does your honor they added that it had to be used for presenting material to patrons for observation by patrons that make it a that that's nonsensical from my only reason you would have had a zoning ordinance in the first place in 1977 was to prevent patrons from seeing either stimulation simulations or displays of nudity or other erotic conduct how did it have applied if you didn't have patrons coming in I agree your honor and the city's original intent in 1977 was it for it only to apply to businesses but despite being called adult businesses the district court in purple onion said it doesn't necessarily only apply because it applies to it applies to any building used for presenting material and so they said it could apply to a house and to fix that they said go ahead and adopt the definitions from young and that's exactly what the city did it adds the the patrons language to make clear just in case it wasn't already that only commercial establishments are subject to the adult business zoning ordinance okay let me ask you one more question and then all then I'll stop okay let's go to adult entertainment establishment yes that has a that has a certain number of disjunctive definitions right yes okay so I would like to talk about the first disjunctive definition and have you tell me why that is constitutional any place of business or commercial establishment wherein the entertainment or activity therein consists of nude or substantially nude persons dancing with or without music the Supreme Court has held for better for worse that nude dancing is activity protected by the First Amendment so tell me how that first disjunctive definition satisfies constitutional scrutiny yes your honor so the Supreme Court has held that exotic dancing and exotic nude dancing is in the outer ambit of First Amendment protections so cities and towns cannot ban nude dancing but what cities and towns can do is use their zoning powers to contain the negative secondary effects of businesses that present such nude dancing from uses which they're incompatible like residential use so the city cannot ban exotic dancing and this does is it says where in the city of Atlanta you can have an adult business that is a strip club that's presenting nude or substantially nude dancers with or without music even though you're not even though you're not tying it to things like the sale of alcohol correct now courts have recognized that the sale of alcohol combined with adult entertainment makes for even worse negative secondary effects but even without negative secondary effects or alcohol rather the city you know relied on over 400 pages of evidence that is in the record of the negative secondary effects brought about by adult businesses like adult entertainment establishments whether or not they have alcohol and you know the urban blight and the decreased property values increased crime that often come with these types of businesses which is why it's appropriate to separate them from incompatible uses like schools churches and residential neighborhoods what's the best case that you have that upholds a zoning limitation on nude or semi nude dancing in and of itself nude or semi nude dancing this definition right here tell me a case that upholds that under a zoning rationale without there being a tie-in to alcohol or other sorts of I believe your honor baby dolls topless saloons is the Fifth Circuit case that upholds an adult business zoning ordinance and I think I think what's important here is the reason that there aren't too many cases like ours is because these laws have been on the books for a half a century and the notion that they might have been unconstitutionally chilling speech for that whole time and nobody thought to challenge them would just be sort of wild your honor um but the Dallas ordinance subjected establishments classified as sexually oriented businesses to zoning restrictions and the the Fifth Circuit upheld that restriction and you know it said that the the probability that something will regularly present adult fare as its actually be a sexually oriented business is highly improbable so there's no likely chilling that comes from taking strip clubs and telling them where in the city of Atlanta they can and cannot be located okay thank you very much for answering my questions yes um and so the overbreadth analysis proceeds in in several steps and the Supreme Court teaches that the first step is construing the statute at issue in our case that step is dispositive because Cheshire's whole argument is is rides on that this law could be applied to a community theater showing the musical hair or the event the Atlanta Ballet staging a ballet that has you know one new dancer in it and that premise is just incorrect your honor because when you go through the first step of the overbreadth analysis and that's to construe the statute as I mentioned these definitions of adult theaters are the same as they were in young and the district court correctly found that baked into the concept of zoning is that our use is regular you know that was the same as a situation in Pangea Cinema which the district court relied on and we did as well where it doesn't specify how frequently a use must occur but one weekend of erotic films does not an adult theater make and judge thrash similarly found that is baked into the concept of zoning that properties are categorized based on their regular use rather than uses to which they might occasionally be put and not only is it baked into the concept of zoning itself that the uses that the zoning restrictions apply to regular uses but in the city of Atlanta's code that is expressed the city's code applies to the principal uses of buildings so if you take for one example that allows it all businesses the c5 central business support districts set forth in the city's zoning code says a building or premises shall be used only for the following principal purposes one adult businesses as defined in section 16-29 point 001 and then it directs the for locational requirements and those are the requirements judge Brasher was referencing earlier about in the proper zone you still have to be 500 feet from a residential area and then similarly the city's the city code defines the word used as used includes the words intended designed or arranged to be used or occupied and same with the word building it includes the words intended designed or arranged to be used or occupied so only a building that is intended designed or arranged to be occupied as say an adult motion picture theater and principally used as an adult motion picture theater is an adult motion picture theater subject to the city of Atlanta's zoning ordinance and so the way Cheshire tries to get around this is misdirection it says that you know cases and consensus require temporal limits in zoning laws but there is no prevailing consensus that temporal limitation limitations or a so-called mainstream exception needs to be in a zoning law and the consensus from this case from Schmitty's from Pangea Cinema and from the half-century that these laws have been on the books is that those words need not apply um what separates these cases from the cases Cheshire relies on the non zoning cases is that here there is a readily available narrowing construction and there there weren't if you say you can never do activity X in town Y you can never have a nude person where alcohol is served there's no way to narrow that so even though courts are constrained to adopt narrowing constructions where the law is readily susceptible to it there there was no narrowing construction here there is and the same reasoning applies equally to adult entertainment establishments as it did to adult theaters for the same reason did you propose a narrowing construction to the district court or the district court come up with it on its own so we proposed your honor that the word regularly is baked into the concept of zoning and also demonstrated in the city's code by principal use so that narrowing construction was suggested by the city Cheshire says that the court went off on its own and adopted a whole bunch of narrowing instructions which isn't true the only thing the court said that we hadn't said is that the word consists of mean consists almost entirely of so for a ballet to you know be characterized you know consist of new dancing it would have to consist almost entirely of new dancing now that is the you know the legal definition of the word as cited by the district court but even if it weren't even if you took Cheshire's argument that it could mean one of a number of ingredients the law would still be valid because there are not mainstream theaters that regularly present shows that have even one as a number of ingredients nude or substantially nude people dancing and so the same reasoning applies to live entertainment which is the adult entertainment establishments and adult cabarets as it did to the adult motion picture theaters you know you as the same essentially the same definition was issue in Schmitty's as this year which was an adult cabaret is a building that features topless dancers strippers or male or female impersonators and the district court out of hand rejected a challenge to it because he said you wouldn't call a bar a martini bar if it served martinis once a year just like you wouldn't call a club a jazz club if 99% of its music was rock and roll and again the regularity concept is not only baked into zoning but expressed in the city's code and I think it's important to note that the Sixth Circuit has twice upheld definitions of adult cabaret that define it as an establishment that features as a principal use of its business entertainers waiters or bartenders bearing certain body parts in that case is entertainment productions Inc versus Shelby County Tennessee it's at 588 F 3rd 372 and it's from 2009 and so the Sixth Circuit said the principal use is the most important use of a building and even if a building could be deemed to have several equally important uses so several principal uses a single run of a show like hair would never be deemed a principal use because a specific play cannot rationally be deemed a principal use of a building so that's the same language oh that's in the city's zoning code it's the principal uses of buildings that the you know just like the Midtown Art Cinema is not rendered an adult motion picture theater for showing a single erotic film or a weekend pornotopia the Atlanta Ballet is likewise not rendered an adult entertainment establishment if it chooses to stage a ballet with a nude dancer so it's not that it's not that the city as Cheshire has suggested suggests that the city's restraint enforcement somehow makes this law valid is that the city the law is not overbroad as reflected by the city's enforcement history it simply does not apply to one-off or isolated instances of nudity let me ask you before you wrap up I just want to ask you this thing that's been bothering me so this is an overbreath challenge and so you have to show basically substantial overbreath so you have to show that this kind of that this law is going to repress speech that's not necessarily the speech of the actor but the speech of somebody else does it matter for a gauging that kind of overbreath challenge to a zoning ordinance the degree to which the zoning ordinance actually restricts locations within an area so for example if should we should we gauge the zoning ordinance the overbreath challenge differently if the zoning ordinance only applies to like 1% of Atlanta's territory or if the zoning ordinance applies to 99% of so your honor that analysis would be done in the intermediate scrutiny that's applicable to time place and manner restrictions set forth in Renton and the district court did that in the first round of summary judgment briefing and Cheshire abandoned that on appeal in the first round is this court recognized in its opinion from a couple of years ago so while you know the Supreme Court has held that you know as little as 5% of an area of area available for adult uses is sufficient but it's the overbreath it's the challengers burden to show that there wouldn't be sufficient ample alternative channels of communication and here Cheshire didn't challenge that and the city has already passed I guess I guess my point is so for this overbreath challenge it's the plaintiffs obligation to show a sort of substantial overbreath and it's diminishing speech if if for example as a matter of fact the zoning ordinance in Atlanta only applied to like 500 square feet and they only get only kept a an adult theater from being placed in 500 square feet of all the territory of Atlanta would we look at that overbreath challenge the same way as something that just banned them from being in a hundred percent of Atlanta would we just do it the same way well your honor overbreath challenges aren't subject to sort of it's sort of elusive how to define when overbreath is substantial and that's actually the role of the judiciary but the chilling effect can obviously be expected to decline as the reach of the statute declines so if the statute would only keep adult businesses out of one acre of Atlanta that would certainly inform the court's decision on whether there was substantial overbreath because you know the the reason that speech is deterred is because of the threat of enforcement there would be so few businesses in that one acre that there isn't a threat of enforcement that would make a real and substantial threat to constitutionally I still do not have video but I'll still proceed on I'd like to address hopefully I can get through with three different areas I'd like to go into your honor you mentioned the purple onion case and in the purple onion case if you recall the district court judge found that the ordinance would apply the definitions would apply to every hotel in downtown Atlanta that showed pay-per-view movies because they would become adult theaters that is still the same case right now right now the city would have the ability if it wanted to to classify the Marriott the Hyatt Regency in every other hotel as an adult because they show adult movies and they are for patrons to pay pay within and so therefore I do agree with this court that the city did not learn from purple onion and did not change anything we'd never discussed yet and I'd like to get into the fact that there is no safe harbor provisions in the in these definitions it is routinely accepted now that you need a safe harbor provision for mainstream literate literary artistic scientific meaning doctors conventions and things of the like in order for a definition and ordinance such as this to be constitutional without the safe harbor again it is almost almost universally understood that that makes these types of definitions unconstitutional the judge Brasher lastly just asked the question in the case of FF Cosmetics which was not specifically a zoning case but it was a regulatory case but in that case the this court acknowledged that even though only a small part of Miami Beach was going to be prevented from having leaflets handed out in that that was still enough for the overbreath of a the leafless leafletting ordinance and the same thing would apply here doesn't matter whether it's one square foot or whether it's the entire city the affront to the First Amendment is the same and over breath now quite candidly I don't know if anybody would be bringing the challenge if it was one point square foot but it does not change the constitutionality and it does not change the constitutional analysis of it the the city argues that regularly used regularly featured are baked into the zoning code and that may be correct but they're not baked into these individual definitions these individual definitions of adult businesses have their own own wordings in them and because they have their own wordings in them and they are not baked into them they have to stand on their own and these definitions are limitations definitions we acknowledge that the regular use is where a theater would go but if it shows one adult movie it becomes an adult motion picture theater that is what is written in the code because it talks about preventive presenting I'd like to give one example if I may as to why of why you can't read consists of the way judge thrash did you have an adult club that you have a club in the city of Atlanta it has dancers dancing and for the first dance the second dance they do not take any off any of their clothes but for the third dance they become completely nude according to what the way judge thrash interprets the code in ordered it for it to be constitutional that would not be an adult cabaret why because only one-third of the of the time that the performance was on would there be an exposure of specified anatomical areas now I will point out in the definition of adult entertainment establishment the city did feel compelled to have a safe harbor for physical fitness studios but not for entertainment so they knew exactly what they were doing the definitions of specified anatomical areas and nudity and and semi nudity are so overbroad that any production that shows the the cleavage of a cleavage of a woman's breasts or the outer sides of a woman's breasts that are commonly seen in an evening wear and bikinis makes it an adult entertainment establishment and it doesn't have to be the entertainer it talks about activity within those establishments not the entertainer so poolside bars and and and things of that like would be adult cabarets under the definition and I tell this court jokingly but seriously any place within the city of Atlanta where Kim Kardashian walks into automatically becomes an adult cabaret and an adult entertainment establishment because she routinely is showing specified anatomical areas or semi nudity as defined under this code and that alone because she always walks in suggestively and whether there's music or not that becomes an adult entertainment establishment this code is overbroad it does not protect constitutionally protected expression and whether it's a zoning code or whether it's a licensing code or a regulatory code the chilling effect of the First Amendment is the same all right thank you both very much we appreciate it how did I look? You look great. Black looks good on you. Thank you.